UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ARMAMENT SYSTEMS AND
PROCEDURES, INC.,

         Plaintiff,

v.

                                            Civil Action No. 04-C-00457

RADIOSHACK CORPORATION
TEAM PRODUCTS INTERNATIONAL,

         Defendants.

-----------------------------------------------------------------------

RADIOSHACK CORPORATION,

         Defendant and Third-Party Plaintiff,

v.

DORCY INTERNATIONAL (HONG KONG)
LIMITED, INC.,and DORCY
INTERNATIONAL, INC.,

         Third-Party Defendant.

**DECISION AND ORDER**

     RadioShack Corporation is a defendant in a patent infringement action brought by Armament Systems and Procedures, Inc. (ASP), against multiple manufacturers and distributers of miniature LED flashlights. The allegedly infringing flashlights sold by RadioShack, called Keychain Lights, were acquired from Dorcy International (Hong Kong) Limited, Inc. (Dorcy HK), pursuant to two separate purchase agreements between Dorcy HK and RadioShack International Procurement (HK), Ltd., the Hong Kong purchasing agent of RadioShack. Under the terms of the

purchase orders, the seller warranted that the merchandise did not infringe on any patent rights and agreed to "protect, indemnify and save harmless" the buyer from "any claims, suits, liabilities, damages, losses or expenses (including but not limited to attorney's fees) incurred by Buyer by reason of any alleged infringement of any such rights." (Rigdon Decl., Ex. G.) When ASP commenced this action against RadioShack for infringement of its patent, RadioShack notified Dorcy HK and requested indemnification. When Dorcy HK refused, RadioShack commenced this third-party action against Dorcy HK and Dorcy International, Inc. (Dorcy US), an Ohio corporation that is allegedly owned by the same entity that owns Dorcy HK. The case is presently before me on Dorcy HK's motion to dismiss RadioShack's claims against it pursuant to Fed. R. Civ. P. 12(b)(2) based upon a lack of personal jurisdiction. For the reasons stated below, the motion will be granted.

**BACKGROUND**

RadioShack, a national retailer of consumer electronic products, is a Delaware Corporation with its principal place of business in Fort Worth, Texas. (Third-Party Compl. ¶¶ 2,10.) RadioShack operates a vast network of sales channels, including nearly 7,000 company-owned and dealer stores, more than 500 Sam's Club wireless kiosks, and a growing number of mall-based Sprint PCS wireless kiosks. Eighty-seven of RadioShack's store or kiosks are located in Wisconsin. (Kim-Morrow Decl. ¶ 4.) Dorcy International, Inc. (Dorcy US) is an Ohio corporation with its principal place of business in Columbus, Ohio. Dorcy HK is a Hong Kong Corporation with its principal place of business in Hong Kong. (Third-Party Compl. ¶¶ 3-4.) Dorcy HK does not own any portion of Dorcy US, and Dorcy US does not own any portion of Dorcy HK. (Kung Decl. ¶ 3.)

2

RadioShack and Dorcy HK began their business relationship in 1999, and since that time RadioShack has paid Dorcy HK nearly one million dollars for various products. (Rigdon Decl. ¶ 4.)

On June 26, 2001 and November 26, 2001, RadioShack, through its purchasing agent RadioShack International Procurement (HK) Ltd., entered into two separate agreements to purchase a total of 52,704 Super Bright LED Keychains from Dorcy HK. The agreements were executed by representatives of Dorcy HK and RadioShack International Procurement (HK) Ltd. in Hong Kong, using RadioShack's standard purchasing orders. (Kung Decl. ¶ 4; Third-Party Compl. ¶ 10.) The first purchase order provided for Dorcy HK to ship 50,112 Keychain Lights F.O.B. Fort Worth, Texas. The second called for 2,592 Keychain Lights F.O.B. Hong Kong.

The purchase orders for both sales contained nearly identical provisions stating that Dorcy HK warranted that the Keychain Lights did not infringe on any patents and that Dorcy HK would indemnify RadioShack for any damages, including attorney's fees, that RadioShack incurred as a result of any alleged infringement. The relevant provision of the June 26, 2001 purchase order, for example, reads:

> Seller warrants that the merchandise shipped under this order does not and will not infringe in patent, trademark, trade name, copyright or other similar right and agrees to protect, indemnify and save harmless the Buyer from any and all claims, suits, liabilities, damages, losses or expenses (including but not limited to attorney's fees) incurred by Buyer by reason of any alleged infringement of any such rights.

(Rignon Decl., Ex. F.)

In addition, Section 2-312 of the Uniform Commercial Code (UCC), codified in the Wisconsin Statutes, provides in relevant part:

3

> Unless otherwise agreed, a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement ....

Wis. Stat. § 402.312(3).

On the basis of this section of the UCC and the warranty provisions of its purchase orders, RadioShack tendered its defense of ASP's lawsuit to Dorcy HK. When Dorcy HK declined its request that it provide a defense, RadioShack commenced this third-party action against Dorcy HK for breach of contract, breach of implied warranty and for attorney's fees. RadioShack seeks a declaration that Dorcy HK is obligated to defend it with respect to the claims alleged by ASP, as well as damages.

In support of its motion to dismiss for lack of personal jurisdiction, Dorcy HK notes that it is legally incorporated in Hong Kong with its principal place of business and corporate headquarters located there. Dorcy HK and Dorcy US are separate and distinct legal entities, and neither owns any share in the other. Dorcy HK does not manufacture, market or sell any products in Wisconsin, nor is it registered to do business in Wisconsin. It does not own or lease property or maintain offices in Wisconsin, and has no mailing address, telephone listing, books, records or bank accounts in Wisconsin. Dorcy HK does not employ any people in Wisconsin, pay taxes there or have an agent for service of process in Wisconsin.

**ANALYSIS**

Dorcy HK asserts that it is not subject to personal jurisdiction in the State of Wisconsin. Once the issue of jurisdiction is raised, the plaintiff has the burden of demonstrating the existence of personal jurisdiction under the state's long-arm statute. *See Logan Productions, Inc. v. Optibase,*

4

*Inc.,* 103 F.3d 49, 52 (7th Cir. 1996). This burden, however, is not a heavy one, as plaintiff need only make a prima facie showing of personal jurisdiction. *See Johnson Worldwide Assoc., Inc. v. Brunton Co.,* 12 F. Supp.2d 901, 906 (E.D. Wis. 1998). In ruling on the issue of personal jurisdiction, courts may consider not only the complaint, but also affidavits from both parties. *Nelson v. Park Indus., Inc.,* 717 F. 2d 1120, 1123 (7th Cir. 1983). The pleadings and affidavits should be viewed in a light most favorable to the plaintiff. *Kinetic Co., Inc. v. BDO EOS Svetovanje*, 361 F. Supp. 2d 878, 880 (E.D. Wis. 2005). All inferences about material jurisdictional facts should be resolved in favor of the plaintiff. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F. 3d 773, 782 (7th Cir. 2003.)

A federal district court exercising diversity jurisdiction has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have such jurisdiction. *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 579 -580 (7th Cir. 1994). Whether a Wisconsin state court would have jurisdiction over the defendant is analyzed under a familiar two-step analysis. First, the state's long-arm statute must apply to the party contesting jurisdiction. "The Wisconsin State Supreme Court has determined that its long-arm statute is to be liberally construed in favor of jurisdiction." *Federated Rural Elec. Ins. Corp. v. Inland Power & Light Co.*, 18 F.3d 389, 391 (7th Cir. 1994). Second, any exercise of jurisdiction must comport with constitutional due process requirements. *See Int'l Shoe Co. v. Washington,* 326 U.S. 310, 319 (1945). As to the second prong of the analysis, it is the burden of the defendant challenging personal jurisdiction to establish that its assertion in this case would violate due process. *Logan Productions, Inc.*, 103 F.3d at 52.

5

RadioShack argues that under the facts of this case subsections (a), (b), (c) and (e) of Wisconsin's long-arm statute, Wis. Stat. § 801.05(5), confer jurisdiction over Dorcy HK. Under these subsections, a court sitting in Wisconsin having jurisdiction over the subject matter has jurisdiction over the person of a defendant served in the action in any action which:

> (a) Arises out of a promise, made anywhere to the plaintiff or to some 3rd party for the plaintiff's benefit, by the defendant to perform services within this state or to pay for services to be performed in this state by the plaintiff; or
>
> (b) Arises out of services actually performed for the plaintiff by the defendant within this state, or services actually performed for the defendant by the plaintiff within this state if such performance within this state was authorized or ratified by the defendant; or
>
> (c) Arises out of a promise, made anywhere to the plaintiff or to some 3rd party for the plaintiffs benefit, by the defendant to deliver or receive within this state or to ship from this state goods, documents of title, or other things of value; or
>
> . . .
>
> (e) Relates to goods, documents of title, or other things of value actually received by the plaintiff in this state from the defendant without regard to where delivery to carrier occurred.

Wis. Stat. § 801.05(5).

I conclude from their plain language that subsections (a), (b), (c) and (e) do not confer jurisdiction over Dorcy HK on the facts of this case. Subsection (a) does not apply because there was no promise to perform services in Wisconsin or to pay for services in Wisconsin. Even assuming Dorcy HK's promise to protect, indemnify and hold RadioShack harmless from any claims of patent infringement constitutes a promise to perform a service, there is nothing to suggest that either party contemplated that such a service would be performed in Wisconsin. There is simply no evidence that could support a finding that Dorcy HK promised to perform services or to

6

pay for services to be performed in Wisconsin. Subsection (b) does not apply because the action does not arise out of services actually performed for RadioShack by Dorcy HK in Wisconsin, or services actually performed for Dorcy HK by RadioShack in Wisconsin. Neither party has performed any services for the other in Wisconsin. Subsection (c) does not apply because the action does not arise out of a promise by Dorcy HK to deliver or receive in Wisconsin or to ship from Wisconsin goods, documents of title or other things of value. Dorcy shipped the Keychain Lights F.O.B. Fort Worth, Texas under the first purchase order and F.O.B. Hong Kong under the second purchase order. Neither purchase order contained a promise by Dorcy HK to deliver or receive in Wisconsin or ship from Wisconsin anything of value. Finally, subsection (e) is inapplicable because RadioShack's action against Dorcy HK does not relate to goods, documents of title, or other things of value received by RadioShack in Wisconsin from Dorcy HK. RadioShack received the Keychain Lights either in Hong Kong or Texas, not Wisconsin. RadioShack apparently then shipped the lights to its stores in Wisconsin.

Since Wisconsin's long-arm statute fails to confer jurisdiction over Dorcy HK on its face, there is no need to decide whether Dorcy HK's contacts with Wisconsin are sufficient to satisfy the demands of the Due Process Clause. I note in any event, however, that even if Wisconsin's long-arm stature did apply, Dorcy HK's contacts with Wisconsin are insufficient to support the exercise of personal jurisdiction under the facts of this case.

The Due Process Clause of the Fourteenth Amendment allows a court to exercise personal jurisdiction over an out-of-state defendant only if that defendant has "minimum contacts" with the forum state, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.,* 326 U.S. at 316. The concept of minimum contacts protects

7

such a defendant from having to litigate in a distant forum and allows the defendant to reasonably anticipate where he may be haled into court. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291-92 (1980). "[T]here must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985), *citing Hanson v. Denckla*, 357 U.S. 235, 253 (1958). But even if minimum contacts are present, it does not follow that due process is satisfied. This is because "[t]he strictures of the Due Process Clause forbid a state court to exercise personal jurisdiction over [a party] under circumstances that would offend traditional notions of fair play and substantial justice." *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 113 (U.S., 1987) (internal quotes omitted).

In the more recent cases, the courts have discussed two types of personal jurisdiction: specific and general. Specific jurisdiction arises out of or relates to the defendant's specific contacts at issue. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.8 (1984); *RAR, Inc.v. Turner Diesel, LTD*. 107 F.3d 1272, 1277 (7th Cir. 1997). The question when specific jurisdiction is at issue is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen,* 444 U.S. at 297. General jurisdiction can arise in almost any type of claim "[e]ven when the cause of action does not arise out of or relate to the [defendant's] activities in the forum State." *Helicopteros Nacionales,* 466 U.S. at 414. General jurisdiction applies when a defendant's contacts with the forum state are "continuous and systematic." *International Medical Group, Inc. v. American Arbitration Ass'n, Inc.,* 312 F.3d 833, 846 (7th Cir. 2002).

8

Here there are no facts to support a finding of general jurisdiction. Dorcy HK does not do business in Wisconsin. It has no office, agents, employees, or property in Wisconsin. There is no evidence that Dorcy HK has had any contact with Wisconsin whatsoever.

RadioShack argues that specific jurisdiction exists in this case because Dorcy HK placed its goods into the United States' stream of commerce, which includes Wisconsin, when it delivered those goods to RadioShack International Procurement (HK) Ltd., and that this alone is a sufficient basis on which to confer jurisdiction under the "stream of commerce" theory adopted by the Supreme Court in *World-Wide Volkswagon*. Although *Asahi Metal Industry Co. v. Superior Court* cast some doubt on the continuing validity of the stream of commerce theory, the Seventh Circuit has continued to follow it. *See Dehmlow v. Austin Fireworks*, 963 F.2d 941, 947 (7th Cir. 1992) ("Because the Supreme Court established the stream of commerce theory, and a majority of the Court has not yet rejected it, we consider that theory to be determinative.") Thus, the minimum contacts part of the due process analysis would seemingly be met. But as noted above, it is not enough to show minimum contacts. A court confronted with a motion to dismiss by an out-of-state defendant for lack of personal jurisdiction must also determine whether the exercise of jurisdiction under the specific facts of the case would offend "traditional notions of fair play and substantial justice." *Asahi*, 480 U.S. at 113 (*quoting Int'l Shoe Co.*, 326 U.S. at 316). This determination depends on consideration of several factors:

> A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies."

*Asahi*, 480 U.S. at 113 (*quoting World-Wide Volkswagen*, 444 U.S. at 292) (citations omitted).

In *Asahi*, a majority of the Court concluded under facts similar to those before me here that a California court's assertion of jurisdiction over a Japanese defendant was clearly unreasonable. In *Asahi*, as in this case, a foreign defendant was sued for indemnification when its product became the focus of a lawsuit halfway around the globe. In holding that California's attempt to exercise jurisdiction over Asahi was unreasonable, the Court first noted that the burden on Asahi was severe:

> Asahi has been commanded by the Supreme Court of California not only to traverse the distance between Asahi's headquarters in Japan and the Superior Court of California in and for the County of Solano, but also to submit its dispute with Cheng Shin to a foreign nation's judicial system. The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.

480 U.S. at 114. The Court next noted that the interest of the plaintiff and the forum state in adjudicating an indemnification claim collaterally related to the principal claim before the court was slight. The *Asahi* Court also found that California's interest in the dispute diminished because neither of the parties to the indemnification dispute were residents of that State and it was not even clear whether California law would apply. Finally, the Court noted that the fact that the defendant was a foreign national warranted special attention to the reasonableness of asserting jurisdiction in the case before. "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Id.* at 115 (*quoting United States v. First National City Bank*, 379 U.S. 378, 404 (1965)). In light of "the international context, the heavy burden on the alien defendant, and the slight interests of the plaintiff and the forum State," the Court concluded that the exercise of personal jurisdiction by a California court over Asahi would be "unreasonable and unfair." *Id*. at 116.

I reach the same conclusion here. The burden on a Hong Kong corporation defending itself in Wisconsin is no less than the burden a Japanese corporation would face in California. And neither the plaintiff in the underlying lawsuit nor the State of Wisconsin has a strong interest in adjudicating RadioShack's indemnification claim. It is true that in *Asahi*, unlike here, the principal claim in the underlying case had already been resolved by the time the question of jurisdiction over the indemnification claim against the foreign defendant came before the Court. But that fact does not significantly change the analysis. The reality is that Radioshack's claim against Dorcy HK is only tangentially related to ASP's claim for patent infringement that is before this court. There is no strong need to resolve that claim in the context of this case. Upon consideration of these facts and the Supreme Court's admonition that courts should be cautious in extending notions of personal jurisdiction in the international field, I conclude it would be unreasonable to assert personal jurisdiction over Dorcy HK. For this reason, too, I conclude the motion to dismiss should be granted.

In the event the court was not inclined to deny Dorcy HK's motion to dismiss, RadioShack requested that it be permitted to conduct limited discovery on the issue of personal jurisdiction. Although discovery for this reason is permissible, RadioShack must first "establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted." *Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000). Moreover, "[f]oreign nationals usually should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists." *Id.*

> A plaintiff is entitled to jurisdictional discovery if he or she can show that the factual record is at least ambiguous or unclear on the jurisdictional issue. . . . but a plaintiff's discovery request will nevertheless be denied if it is only based upon bare,

11

attenuated, or unsupported assertions of personal jurisdiction, or when a plaintiff's claim appears to be clearly frivolous.

*Owner Operator Resources, Inc. v. Maag* 2003 WL 21911061, *5 (N.D. Ind. 2003).

Here RadioShack seeks discovery on three issues: the relationship between Dorcy US and Dorcy HK, other contacts Dorcy HK may have had with Wisconsin, and whether Dorcy HK ever intended to indemnify RadioShack. I am unconvinced that further discovery on any of these issues would change the result. The issue of whether Dorcy HK ever intended to indemnify RadioShack has no bearing on whether personal jurisdiction exists in this case. With respect to RadioShack's other areas of inquiry, it may be that other products sold by Dorcy HK found their way to Wisconsin. But there is no suggestion that this would be sufficient to give Dorcy HK a local presence in Wisconsin within the meaning of Wis. Stat. § 801.05(1)(d). Additional sales of other products through other retailers would not change my finding that there is no basis for personal jurisdiction under § 805.05(5). Finally, the fact that Dorcy HK and Dorcy US share the same parent provides no basis for ignoring the limitations on personal jurisdiction discussed above. RadioShack has failed to establish even a prima facie basis for jurisdiction. Accordingly, its motion for limited discovery will be denied.

**IT IS THEREFORE ORDERED** that Dorcy HK's motion to dismiss for lack of personal jurisdiction is **GRANTED**.

**IT IS FURTHER ORDERED** that RadioShack's request for limited discovery is **DENIED**.

Dated this   6th   day of August, 2005.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge